BANTAM BOOKS, INC. *et al. vs.* JOSEPH A. SULLIVAN *et al.*
*As Members of the Rhode Island Commission to*
*Encourage Morality in Youth.*

DECEMBER 20, 1961.

PRESENT: Condon, C. J., Roberts, Paolino, Powers, JJ.

CONDON, C. J.  This is a petition to the superior court for a declaratory judgment under G. L. 1956, chap. 9-30, otherwise known as the uniform declaratory judgments act.  The cause is here on the petitioners' appeal from a decree denying a portion of the relief prayed for, and also on the respondents' appeal from such decree granting the petitioners certain other relief which they sought.

The petitioners are Bantam Books, Inc., Dell Publishing Company, Inc., Pocket Books, Inc. and The New American Library of World Literature, Inc., all New York corporations engaged in the business of publishing paper-bound books but not in distributing them in this state.  The respondents are the executive secretary and members of the Rhode Island Commission to Encourage Morality in Youth.  The commission was created by the general assembly at its January 1956 session by resolution No. 73.

The resolution was amended on May 25, 1959 and as amended it charges the commission as follows:

> "It shall be the duty of said commission to educate the public concerning any book, picture, pamphlet, ballad, printed paper or other thing containing obscene, indecent or impure language, as defined in chapter 11-31 of the general laws, entitled 'Obscene and objectionable publications and shows,' and to investigate and recommend the prosecution of all violations of said sections, and it shall be the further duty of said commission to combat juvenile delinquency and encourage morality in youth by (a) investigating situations which may cause, be responsible for or give rise to undesirable behavior of juveniles, (b) educate the public as to these causes and (c) recommend legislation, prosecution

and/or treatment which would ameliorate or eliminate said causes."

In the discharge of such duty as they construed it the commission compiled several lists of publications which upon investigation they deemed "completely objectionable for sale, distribution or display for youths under eighteen years of age" and notified distributors doing business within the state thereof. They also advised these distributors that the lists had been furnished to the police departments throughout the state. They asked for the cooperation of the distributors in removing the objectionable publications and stated that the receipt of such cooperation would eliminate the necessity of the commission recommending prosecution to the attorney general. As a result of such notices the distributor for Bantam Books, Inc. and Dell Publishing Company, Inc. returned a supply of certain paper-bound books published by them and stated the books could not be held for sale because they were listed by the commission as objectionable. The distributor did not object to the commission's action and is not a party to the instant proceedings.

In their petition petitioners alleged that Resolution No. 73 is an unconstitutional interference with the right of freedom of the press guaranteed by the first amendment to the federal constitution and made applicable to the states by the fourteenth amendment. They also alleged that it is violative of article I, sec. 20, of the constitution of this state guaranteeing such freedom. The petitioners further alleged that as construed by the commission the resolution was unconstitutionally applied by them, that their actions thereunder should be declared null and void, and that they should be enjoined from continuing such acts.

The cause was heard by a justice of the superior court without a jury on petition, answer and oral proof as though it were a suit in equity. At the conclusion of the evidence the trial justice decreed (1) that the resolution was consti-

tutional, but (2) that the acts of respondents under their construction of it were unconstitutional in that they were in effect prior restraints of freedom of the press. On that ground they were (3) expressly enjoined by the decree from continuing such acts.

The petitioners contend that the trial justice erred in sustaining the constitutionality of the resolution. In support of such contention they argue that the same reasons upon which he based his finding that the commission's acts were unlawful were equally applicable to the resolution itself. On the other hand respondents, under their appeal, contend that their acts were in accordance with the authority vested in them by the resolution and that since the trial justice could not find it unconstitutional he erred in enjoining them from continuing such acts thereunder.

We have no difficulty in declaring the resolution constitutional. On its face it does not authorize previous restraint of freedom of the press. It does not confer on the commission any official power to regulate or supervise the distribution of books or other publications. The functions conferred are solely educative and investigative in aid of the legislative policy to prevent the dissemination of obscene and impure literature, especially as it affects the morality of youth. The commission cannot lawfully *order* anyone to comply with its conclusions regarding the objectionable nature of a publication which it has officially investigated.

Unless and until such publication is judicially determined to be obscene the distributor may with impunity refuse to respond to any suggestions of the commission. He may treat them as of no more binding force than similar suggestions of an unofficial group. Indeed each is on a par with the other. The mere fact that the commission may recommend prosecution does not alter the case. They cannot *order* prosecution; that judgment is solely with the attorney

general. Any unofficial group may do as much in this respect as the commission.

As we view this resolution it does no more than clothe a designated group of individuals with an official status but with little if any more power than to investigate and recommend action by the appropriate authorities where its investigation indicates action is necessary. As such it may well be considered an arm of the legislature to effectuate its policy of preventing the dissemination of obscene literature and conceivably also in the nature of a bureau of investigation in aid of the police and the department of the attorney general in their detection and prosecution of violators of "chapter 11-31 of the general laws."

No case has been cited to us and we are aware of none wherein a similar resolution has been involved and its constitutionality questioned. While the United States supreme court has considered a number of cases involving various forms of state interference with freedom of the press, some of which have been cited by petitioners, none of them was concerned with a provision like resolution No. 73. *Smith* v. *California*, 361 U. S. 147; *Kingsley Books, Inc.* v. *Brown*, 354 U. S. 436; *Roth* v. *United States* and *Alberts* v. *California*, 354 U. S. 476; *Chaplinsky* v. *New Hampshire*, 315 U. S. 568; *Lovell* v. *City of Griffin*, 303 U. S. 444; *Near* v. *Minnesota ex rel. Olson*, 283 U. S. 697. From our examination of those cases we are of the opinion that the supreme court would not deem such a provision violative of the first amendment as a previous restraint of freedom of the press. In any event unless and until the supreme court so rules we hold that the trial justice did not err in deciding that the resolution was constitutional.

We now come to the question whether he erred in holding that the commission in applying the resolution acted unconstitutionally. The petitioners argue that he did not, and they cite the following cases in support of his decision. *Dearborn Pub. Co.* v. *Fitzgerald*, 271 Fed. 479; *American*

*Mercury, Inc.* v. *Chase,* 13 F.2d 224; *Busey* v. *District of Columbia,* 138 F.2d 592; *New American Library of World Literature, Inc.* v. *Allen,* 114 F. Supp. 823; *Grove Press, Inc.* v. *Christenberry,* 175 F. Supp. 488; *HMH Publishing Co.* v. *Garrett,* 151 F. Supp. 903; *Bantam Books, Inc.* v. *Melko,* 25 N. J. Super. 292.

None of those cases is by a court of last resort. In each instance the decision is by a single judge of a court of inferior jurisdiction. However, we have nevertheless examined them, not because they have any standing as precedents but solely because of the possibility that the reasoning upon which the court based its decision might help in solving our problem. On examination we find that they are of no assistance. Most of such cases did not present a factual situation like the one in the instant case. In others where the facts were somewhat analogous the reasoning that led the judge to find prior restraint of freedom of the press is not, in our opinion, convincing. Moreover, in most of those cases the judge predicated such finding on some unlawful action causing or threatening to cause irreparable injury to the complainant's property.

In the case at bar the evidence discloses no unlawful act on the part of the commission. On the contrary, their acts were in accord with the clearly expressed objectives of the resolution. They were only seeking and received the voluntary cooperation of petitioners' distributor. He was free to disregard their request for cooperation and if he did so he had nothing to fear except prosecution for violating G. L. 1956, chap. 11-31. And even such fear would be groundless if the books in question were not obscene.

It is no justification for petitioners to argue as they do that because the local distributor will not want to oppose the commission such a practice has the inevitable result of suppression of their books by censorship. Enforcement of the law against obscenity is not easy. It is hedged about by constitutional safeguards which in appropriate instances

have been strictly applied. But the United States supreme court has repeatedly held that obscenity is not protected by the guaranties of the first amendment. *Near* v. *Minnesota ex rel. Olson,* 283 U. S. 697; *Chaplinsky* v. *New Hampshire,* 315 U. S. 568; *Roth* v. *United States,* 354 U. S. 476. However, that court has also held that the local distributor or bookseller cannot be convicted of such an offense unless the state proves that he had knowledge of the obscene nature of the book. *Smith* v. *California,* 361 U. S. 147.

Ordinarily a distributor or bookseller is not expected to know the character of all the books he distributes. It is only fair that he should be given some advance notice of which he may avail himself, if he chooses, before criminal proceedings are commenced against him. It is in that context we interpret the action of the commission here and the willing response thereto of the distributor. Of course the publisher would much prefer to have the distributor stand his ground and refuse to cooperate regardless of the consequences to him.

The status of the publisher, however, is vastly different from that of the distributor. He may not plead lack of notice. It is his business to know what he is publishing. If his publication on the bookseller's shelf is obscene, he is the real offender and it is his offense which resolution No. 73 seeks to discover and prosecute. But more often than not the publisher is beyond reach of the local law and in effect hides behind the unoffending local distributor.

When, as in the case at bar, steps are taken to save the local distributor from embroilment in criminal proceedings the petitioning publishers come forward protesting that the commission is depriving them of their constitutional right of freedom of the press. Their success in a number of jurisdictions in invoking the injunctive remedy has apparently encouraged them to invoke it here in the hope of thwarting the implementation by the commission of resolution No. 73.

They rely heavily on the above-cited cases where such successes have been achieved.

However, in the instant case we are of the opinion that they are not aggrieved by any deprivation of their constitutional right to distribute their books in this state. Resolution No. 73 does not by its terms nor by the commission's acts under it prevent them from doing so. Unless their books are obscene they have nothing to fear. But if they are deemed to be obscene by the prosecuting authority of the state they cannot use the injunctive remedy of equity to prevent the state from bringing them to the bar of justice by appropriate criminal proceedings. In such proceedings they will have a full, fair and impartial judicial determination of the issue of obscenity.

Obscenity is entitled to no special protection under either the state or federal constitution. In *Chaplinsky* v. *New Hampshire,* 315 U. S. 568, the supreme court of the United States unanimously declared that lewd and obscene speech raises no constitutional question. At page 572 it said, "such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality."

It is the social interest in order and morality that the legislature by enacting resolution No. 73 is seeking to subserve. And the acts of the commission thereunder were in our opinion a reasonable and lawful implementation of the resolution. To tie their hands by the injunction under consideration here would be to render them impotent to discharge the duties that the general assembly has specifically charged them to perform. We are therefore of the opinion that the trial justice erred in decreeing that their actions were unconstitutional and in enjoining them from so acting henceforth.

Before concluding this opinion we should comment on *Sunshine Book Co.* v. *McCaffrey,* 4 App. Div. 2d (N. Y.)

643, upon which petitioners have also relied. Although that case is not by a court of last resort it does come from a court of appeal having a very large measure of revisory jurisdiction and for such reason its decisions stand on a higher plane of authority than those hereinbefore commented upon. However, we do not think the cited case helps the petitioners since it appears to be based on a factual situation not at all like the one here.

In that case a license commissioner threatened a licensed news dealer with revocation of his license if he did not remove certain copies of a magazine from his newsstand. In the instant case no license is involved and the commission neither had any regulatory authority over the distributor nor attempted to exercise any such authority. And in the cited case the license commissioner was not acting pursuant to the provisions of a legislative act imposing upon him specifically the duty of investigating obscene literature and recommending prosecution of violators of the statute law against obscenity. In any event even though the case may impliedly stand for more than it expressly decides we are not persuaded to accept it as authority in the special circumstances here.

The petitioners' appeal is denied and dismissed, the respondents' appeal is sustained in part, the decree appealed from is reversed as to order Nos. 2 and 3, otherwise it is affirmed, and the cause is remanded to the superior court for further proceedings.

ROBERTS, J., dissenting. I concur in the opinion of the majority that resolution No. 73, as amended, is not in its terms repugnant to the guaranties of the first amendment. The legislature has therein provided for an appropriation for the support of a program of public education concerning the deleterious influence of the publication of obscene, lewd, or indecent periodicals on the morals and welfare of youth and for appointment by the Governor of the members of a commission charged with the duty of conducting

that program. I perceive no provision therein which would warrant concluding that the legislature contemplated that the commission was being authorized to act to engage in conduct other than that incidental to the program.

I am not fully persuaded that legislation providing for the dissemination of information relating to a matter of substantial public concern constitutes state action within the purview of the inhibitions of the pertinent constitutional provisions. The commission, as it is therein established, is without authority either to regulate the business that is the subject of the legislation or to accomplish any control over that business through the imposition of sanctions. An exercise of the duties imposed upon the commission therein does not impinge upon any right protected by the first amendment.

However, I am unable to concur in the conclusion of the majority concerning the propriety of the injunctive relief decreed by the trial justice. The respondents here, whatever might be their rights as individuals, may act legally in their capacities as members of the commission only within the authority conferred upon the commission by the resolution. It appears from the record that the commission, or certain of its officers acting in its behalf, has engaged in conduct that is clearly in excess of the authority conferred upon it by the resolution. Such action, to the extent that it exceeds the authority conferred, is illegal and may, upon a showing of the requisite equitable grounds, be enjoined.

The action upon which this finding of illegality is predicated relates to the circulation of notices to dealers in books and publications wherein the commission identifies certain books that it deems to be objectionable for sale or distribution for use by youths under the age of eighteen. The circulation of these notices, standing alone, was in my opinion action pursuant to the dissemination of information contemplated in the resolution. There is, however, further evidence tending to establish that the circulation of this infor-

mation was implemented at the commission's instigation by a police surveillance of the stocks in the possession of these dealers which caused certain of them to withdraw the books so identified from sale generally. Of this the trial justice said: "The sending of these notices with their implicit threats of criminal prosecution are clear violations of the constitutional provisions guaranteeing freedom of the press." I am not persuaded, however, that it is necessary to pass upon the constitutional issue, it being my opinion that the action to which the trial justice refers was beyond the power conferred upon the commission and, therefore, illegal.

There is in the record evidence which is concerned with the authority that the commission through its officers purported to exercise that buttresses the conclusion which I here reach. In what appears to be a circular letter dated July 19, 1957 over the signature of the executive secretary of the commission, dealers in books and publications were told: "This agency was established * * * with the immediate charge to *prevent* the sale, distribution or display of indecent and obscene publications to youths under eighteen years of age." (italics mine) In another undated circular letter over the signature of the executive secretary of the commission, the assertion was made that certain amendatory legislation operated to "broaden the powers of this Commission, giving us broad investigative powers * * *." It is my opinion that the two examples above set out suffice to reveal that the commission or its officers substantially misconceived the purpose for which resolution No. 73 was enacted as well as the extent of the authority conferred upon the commission by the terms of that legislation.

After a thorough examination of the resolution I cannot find therein any language which either in express terms or by reasonable inference confers upon the commission or its officers authority to *prevent* the sale or distribution of any publication. The statement contained in the circular let-

ter of July 19, 1957 constitutes an entirely unwarranted assumption that the commission was vested with power to *prevent* the sale of such publications. Neither do I find in the resolution any provision from which it may be reasonably assumed that the commission or its officers were invested with investigative powers. The language of the resolution providing that the commission make recommendations to prosecute violations of criminal statutes concerned with obscenity confers no inquisitorial power or, for that matter, any power to institute a criminal proceeding. It is my opinion that to so construe the provision referred to would be to clearly violate our well-settled rules of statutory construction.

It is my opinion then that the commission, or its officers acting in its behalf, in purporting to act pursuant to the authority conferred by resolution No. 73 has engaged in conduct that exceeded the authority in fact conferred and to that extent its action was illegal. For this reason I am constrained to dissent from the conclusion of the majority that the trial justice erred in granting the injunctive relief.

*Abedon, Michaelson and Stanzler, Milton Stanzler, Weil, Gotshall & Manges, Horace S. Manges, Jacob F. Raskin,* New York, New York, for petitioners.

*J. Joseph Nugent,* Attorney General, *Joseph L. Breen,* Chief Special Counsel, for State, for respondents.